UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LUCIA R.,**[1]

      **Plaintiff,**

v.

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

Case No. 1:22-cv-0144
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Lucia R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On June 12, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since August 1, 2016. R.113, 126, 288–94. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 156–60, 167–69. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 172–74. ALJ Daniel Shellhamer ("ALJ Shellhamer") held a hearing on August 1, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 72–101. In a partially favorable decision dated October 10, 2019, ALJ Shellhamer concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2016, Plaintiff's alleged disability onset date, through January 11, 2017, but that she became disabled beginning January 12, 2017. R. 133–39 ("2019 decision"). The Appeals Council vacated ALJ Shellhamer's 2019 decision, and remanded the matter for further proceedings, explaining as follows:

> In a partially favorable decision dated October 10, 2019, the Administrative Law Judge found the claimant disabled beginning January 12, 2017, due to the severe impairments of hypertension, chronic obstructive pulmonary disease, and major depressive disorder (Finding 3). The Administrative Law Judge found that, prior to January 12, 2017, the claimant retained the residual functional capacity to perform light work; she could understand, remember, and carry out instructions, and meet the other mental demands associated with skilled work; she could interact with coworkers, supervisors, and the general public, and she could do job tasks which involved dealing primarily with objects rather than data (Finding 5). The Administrative Law Judge found, beginning on January 12, 2017, the claimant could perform light work, except she could understand, remember and carry out simple instructions, could only do unskilled work, could deal with minor or few changes in a routine work setting, could only occasionally interact with coworkers, supervisors, and the general public, and could do job tasks which involve dealing primarily with objects rather than data (Finding 6). Based on these residual functional capacities, the Administrative Law Judge concluded that, prior to January 12, 2017, the claimant was capable of performing past relevant work as a barber, but beginning on January 12, 2017, the claimant would be found "disabled" as directed by Medical -Vocational Rule 202.06 (Findings 7, 12).
>
> The Appeals Council has carefully considered the entire record, including auditing the hearing recording, and finds that the hearing decision contains an error of law and is not supported by substantial evidence.
>
> The Social Security Administration has specific rules for the evaluation of disability claims and about what information must be contained in a hearing decision. HALLEX I-2-8-25 requires an Administrative Law Judge to explain the findings on each issue that leads to the ultimate disability conclusion, including citing and

discussing supporting evidence, as well as discussing the weight assigned to various pieces of evidence. When a case includes evidence of a mental impairment, evaluation of the effect of the claimant's mental impairments in four areas of functioning using a special technique set forth in 20 CFR 404.1520a is required.

In the claimant's case, the Administrative Law Judge did not sufficiently evaluate the claimant's mental impairments using the special technique required by 20 CFR 404.1520. Page 4 of the decision indicates the Administrative Law Judge found, "before the established onset date," the claimant had moderate limitations of understanding, remembering, or applying information; mild limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and mild limitations adapting or managing herself. However, the decision does not contain application of the special technique, or articulation of the "paragraph B" criteria for the period beginning January 12, 2017. Furthermore, the residual functional capacity finding, prior to January 12, 2017, is inconsistent with the "paragraph B" finding, because the residual functional capacity prior to January 12, 2017 does not include limitations corresponding to the findings of moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace.

Additionally, the treatment record includes evidence that appears inconsistent with the level of mental limitation assessed by the Administrative Law Judge. However, the Administrative Law Judge did not address these findings or adequately explain how they result in the mental and social restrictions set forth in the residual functional capacity for the period beginning on January 12, 2017.

The Administrative Law Judge found the claimant disabled beginning January 12, 2017, based on inpatient psychiatric hospitalization at Northbrook Behavioral Health Hospital for attempting to overdose on her medications (Decision, page 6). In support of this onset date, the decision indicates after the hospitalization, treating physicians Dr. Zielinski and Dr. Waisbren reported worsening of the claimant's depression, and cited to the claimant's symptoms reports from treatment notes in August 2017, October 2018, and June 2019. The Administrative Law Judge further indicated the claimant was concerned for her husband, who eventually passed away in April 2019, and the claimant was unhappy with her treatment at Cape Counseling (Decision, page 6).

However, the record contains objective evidence that is not consistent with the Administrative Law Judge's finding, including numerous benign mental status examinations and reports by the claimant and her doctors that she was feeling better and seemed to be improving. For example, on January 20, 2017, one day after the claimant's discharge from hospitalization, mental status examination showed the claimant had circumstantial, paranoid and obsessive thought, restless psychomotor activity and she reported difficulty sleeping, but had no suicidal ideation (Exhibit 8F, pages 48- 49). The claimant's treating provider reported Lexapro had been beneficial for her depression, that the claimant had up and down mood but indicated

her symptoms were "somewhat better" (Exhibit 8F, pages 50-52). On March 30, 2017, the claimant denied suicidal thoughts and reported she felt "good," that she was feeling "much better," had better mood (Exhibit 8F, page 55). Dr. Zielinski observed the claimant looked "very well," and indicated the claimant's symptoms were "somewhat better" (Exhibit 8F, pages 55-59). The claimant's mental status examination was largely benign, with coherent normal thought, euthymic mood, normal appearance and normal psychomotor activity (Exhibit 8F, pages 58-59). On June 14, 2017, the claimant reported she had been feeling a little depressed and her sleep was "not as solid as it had been," but overall she was "feeling good enough" (Exhibit 8F, page 64). The claimant reported she was no longer seeing her counselor but denied suicidal or homicidal intentions or plans. The claimant was well-kempt and had recently dyed her hair blond and gotten a tan (Exhibit 8F, page 64). The claimant's mental status examination was again benign, with coherent normal thought, depressed and anxious mood but no suicidal ideation or abnormal psychomotor activity (Exhibit 8F, page 67-68). Dr. Zielinski again indicated the claimant's symptoms were "somewhat better" but had noted that the claimant was entertained and laughing over the fact that he had not recognized the claimant immediately with her updated appearance. The claimant was scheduled for 3 month follow up interval (Exhibit 8F, pages 64, 68, and 72). This visit occurred only approximately two weeks prior to the expiration of the claimant's insured status on June 30, 2017.

Treatment notes shortly after the claimant's June 2017 date last insured continued to indicate longitudinally that her status was improved compared to the January 2017 exacerbation. The claimant continued with conservative and relatively infrequent treatment. On August 30, 2017, the claimant reported she was not sleeping very soundly but her mood had improved; she indicated she got sad thinking about her husband but denied suicidal or homicidal ideations (Exhibit 14F, page 1). The claimant's mental status examination was again benign, with coherent thought and euthymic mood (Exhibit 14F, page 4). Dr. Zielinski again indicated the claimant's symptoms were "somewhat better" (Exhibit 8F, page 5). On November 15, 2017, the claimant reported she was doing well, denied suicidal or homicidal ideation, and had a benign mental status examination with no significant abnormalities (Exhibit 14F, pages 11-15). By the time the claimant was seen again in 2018, the claimant was nearly one year beyond her date last insured, with treatment notes from April 2018 showing complaints of some weight gain but denial suicidal ideation. The claimant continued to have benign mental status examinations including euthymic mood (Exhibit 14F, pages 51-55). Ultimately, and as indicated above, many of these clinical findings are inconsistent with the Administrative Law Judge's assessment of the claimant's mental limitations. Therefore, further consideration is required.

Finally, the hearing decision indicates that the claimant is limited to the light exertional level throughout the period at issue (Findings 5 and 6). The hearing decision indicates that carpal tunnel syndrome did not severely impair the claimant for at least 12 months (Decision, page 3). The remaining physical impairments are

> referenced only briefly in connection with treatment by Burton Waisbren, M.D. (Decision, page 5). Some of that rationale refers to treatment prior to the period at issue and does not fully address compliance issues. Evidence from Mahendra P. Dadhania, M.D., indicates in May 2017 that respiratory complaints had improved with medical adjustment despite continued smoking. In June 2017 the claimant was "a lot better" and had minimal exacerbations. Similarly, in July 2017 the claimant's allergy symptoms were well controlled on medications. Chest symptoms and asthma were well controlled also (Exhibit 15F, pages 1-3). The hearing decision does not contain adequate rationale with reference to evidence of record regarding the claimant's maximum physical residual functional capacity throughout the period at issue.

R. 147–50. The Appeals Council specifically ordered the ALJ on remand to

- Obtain evidence from medical experts related to the nature and severity of and functional limitations and/or onset resulting from the claimant's physical and mental impairments throughout the period at issue in light of the claimant's insured status (20 CFR 404.1520b).

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

- Give further consideration to the claimant's maximum physical and mental residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).

- Give further consideration to the claimant's ability to return to past relevant work.

- As warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14), and if appropriate to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p[.]

R. 150–51. The Appeals Council specifically directed the ALJ to "offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." R. 151.

On remand, ALJ Trina Moore ("the ALJ") held a hearing on January 8, 2021, at which Plaintiff, who was again represented by counsel, again testified; a vocational expert and a medical expert also testified. R. 38–71. In a decision dated March 30, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 1, 2016, Plaintiff's alleged disability onset date, through June 30, 2017, the date on which Plaintiff was last insured for benefits. R. 15–31 ("the 2021 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 8, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 6, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On June 8, 2022, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    THE 2021 DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2021. R. 18. On that date, Plaintiff was 57 years old, which is defined as an individual of advanced age, and she subsequently changed the age category to that of closely approaching retirement age. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 1, 2016, her alleged disability onset date, and June 30, 2017, the date on which she was last insured. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, major depressive disorder, unspecified anxiety disorder, diabetes mellitus, osteoarthritis of the hands, status post right third finger distal interphalangeal joint fusion surgery, and diabetic neuropathy. *Id*. The ALJ also found that the following diagnosed impairments were not severe: status post small-bowel resection, unspecified peripheral vascular disease, asthma, hyperlipidemia, choleslithiasis, chronic obstructive pulmonary disease, and obstructive sleep apnea. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 19–22.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 22–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a barber. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a vehicle cleaner, a bagger, and a laborer–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2016, her alleged disability onset date, through June 30, 2017, the date on which she was last insured. R. 31.

Plaintiff disagrees with the ALJ's findings at step four and contends that the ALJ failed to follow the Appeals Council's order; she asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Brief for Plaintiff,* ECF No. 17 *Plaintiff's Reply Brief*, ECF No. 24. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

## IV. DISCUSSION

Plaintiff raises a number of arguments, including the argument that substantial evidence does not support the ALJ's RFC determination because, *inter alia*, the ALJ erred in finding that Plaintiff was capable of performing work at the medium exertional level. *Brief of Plaintiff*, ECF No. 17, pp. 35–37; *Plaintiff's Reply Brief*, ECF No. 24, pp. 10–12. For the reasons that follow, this Court concludes that the ALJ's RFC for medium work is not supported by substantial

evidence, but for reasons slightly different from those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

     A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of medium work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: The claimant can frequently handle and finger bilaterally. She must avoid all exposure to hazards, such as unprotected heights and moving mechanical parts. She can never climb ladders, ropes, and scaffolds. Finally, she is limited to performing simple, routine tasks.

R. 22. In making this determination, the ALJ explained:

> Her activities of daily living demonstrate an ability to perform medium work. She was caring for her disabled husband prior to his passing, which occurred after her alleged onset date. *She was able to stand, lift, and use her hands in order to prepare daily meals, cooking for upwards of two hours at a time. Her generally normal physical examination signs support the activities of daily living identified in her function reports.*

R. 28–29 (emphasis added). The ALJ further explained, *inter alia*, that

> [t]he evidence supports finding the claimant is capable of medium work, as there is little evidence of abnormal examination signs or medical diagnoses to support a more limiting exertional level. . . . Her examination signs reflect generally normal sensation, full motor strength, and normal reflexes. Laboratory findings show that her diabetes is well controlled and without complications. Laboratory findings also show that *she does not have radiculopathy*, sensory neuropathy, or ulnar neuropathy.

R. 28 (emphasis added).

Substantial evidence does not support the ALJ's proffered reasons for finding that Plaintiff was capable of performing medium exertional work. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *see also* SSR 83-10 ("The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent

14

lifting or carrying objects weighing up to 25 pounds."). The ALJ's reliance on Plaintiff's daily activities as identified in her function reports, R. 29, does not establish that Plaintiff can perform this level of exertion. As set forth above, the ALJ noted that Plaintiff cared for her husband, which included standing, lifting, and using her hands to prepare meals, and cooking for up to two hours at a time. *Id.*; *see also* R. 357 (reflecting Plaintiff's June 19, 2017, function report in which Plaintiff stated that she cooks once a day for up to two hours; performs household chores such as cleaning, laundry, and ironing; but does not do yard work because it is "to[o] hard for me to do"), 359–60 (reflecting the same function report in which she indicated that her illnesses / conditions affected, *inter alia*, her ability to lift and that she could lift "maybe 20 pounds"), 377 (reflecting Plaintiff's April 13, 2018, function report in which she stated that she cooks up to two hours and performs household chores such as cleaning and laundry but performs no household repairs), 379–80 (reflecting the same function report in which Plaintiff indicated that her illnesses / conditions affected, *inter alia*, her ability to lift and that she could lift "around 15 – 20 pounds"). It is not apparent to the Court—and the ALJ failed to explain—how this evidence and these activities establish that Plaintiff can perform medium exertional work, which, as previously noted, requires an ability to lift up to 50 pounds and to frequently (up to six hours in an eight-hour day) lift and carry up to 25 pounds. *See id.*; *see also* 20 C.F.R. § 404.1567(c); *Holler v. Barnhart*, 102 F. App'x 742, 744 (3d Cir. 2004) ("The ALJ does not explain why he found that Holler's activities [cooking, taking walks, feeding and bathing her dogs, performing household chores, shopping, driving, singing in her church's choir, and acting as the church's treasurer] were inconsistent with an inability to work at the medium level although both doctors account for Holler's activities and still conclude that Holler was capable of light work at most. Rather, the ALJ appears to have concluded that he could better interpret Holler's history than both of the

15

physicians of record."); *Rosario v. Kijakazi*, No. 22-CV-4311, 2023 WL 6847564, at *12 (E.D. Pa. Oct. 17, 2023) ("To the extent that the ALJ relied upon Plaintiff's jogging/running and playing volleyball referenced in the paragraph of the decision at issue, it is unclear how participation in these activities would establish an ability to perform medium but not light work, as the ALJ found, because these activities do not involve substantial lifting or carrying and 'the primary . . . difference between light work and medium work is the lifting and carrying weight requirements[,]' specifically how often a claimant can lift and carry weight between 10 and 50 pounds, if at all.") (citations omitted); *Orlando v. Kijakazi*, No. CV 21-1431, 2023 WL 2530318, at *5 (E.D. Pa. Mar. 15, 2023) ("Nothing in either her kitchen or sales activity, then, would support the ALJ's finding that she could lift and carry 25-lb. items for up to 6 hours per workday and carry 50-lb. items for up to 2 hours per workday. We cannot agree with the Commissioner that the ALJ's finding that Orlando maintained an RFC to perform work at the medium exertional level was established in this record. Rather, we find that no 'reasonable mind' would accept the evidence in this record as supporting such a conclusion."); *Khon v. Barnhart*, No. CIV.A.03-5122, 2004 WL 2203740, at *9 (E.D. Pa. Sept. 3, 2004) ("There does not appear to be any objective medical evidence supportive of a conclusion of medium exertional capacity, that is, ability to lift fifty pounds occasionally and twenty-five pounds frequently."); *cf.* R. 61–62 (testifying at the hearing that she lifted less than 5 pounds in her past relevant work as a barber).

In addition, the Court is not persuaded that Plaintiff's "generally normal physical examination signs[,]" R. 29, without more explanation, establish that Plaintiff was capable of performing medium exertional work. *Cf. Holler*, 102 F. App'x at 744 (concluding that the ALJ did not explain how medical findings of "only 'mild degenerative changes,' 'normal range of motion,' 'full motor strength,' 'normal reflexes,' 'no atrophy' and 'a normal gait and station,'

16

were inconsistent with" a physician opinion that the claimant could perform only light exertional work). In any event, the ALJ misstated, in part, the objective medical evidence when concluding that the evidence supported a finding Plaintiff could perform medium exertional work because, *inter alia*, "[l]aboratory findings also show that she does not have radiculopathy[.]" R. 28. To the contrary, a December 2016 MRI of the lumbar spine revealed, *inter alia*, "[l]umbar radiculopathy at L3-L4 on the right." R. 953 (recommending, *inter alia*, "[p]hysical therapy 2 to 3 times a week for 6 weeks for the pain and numbness in the right leg (L3 radiculopathy on the right)"); *see also* R. 956 (reflecting a December 1, 2017, letter from Scott D. Tzorfas, M.D., Plaintiff's treating neurologist, in which the doctor stated, *inter alia*, that Plaintiff's December 2016 MRI of the lumbar spine "does provide a good correlate for her pain"). Substantial evidence therefore does not support the ALJ's statement that "[t]he evidence supports finding that the claimant is capable of medium work, as there is little evidence of abnormal examination signs[,]" including, *inter alia*, the misstatement that "[l]aboratory findings also show that she does not have radiculopathy[.]" R. 28; *see also Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

      The Court cannot conclude that the ALJ's determination that Plaintiff has the RFC for a limited range of medium exertional work is harmless. The Medical-Vocational Guidelines would direct a finding of disability if Plaintiff were found to be capable of only light work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06 (directing a finding of disabled for a claimant who is

limited to light work, is of advanced age, is a high school graduate or more, and has skilled or semi-skilled nontransferable prior work experience); *Douthett v. Saul*, No. CV 19-885, 2020 WL 5077453, at *3 (W.D. Pa. Aug. 26, 2020) ("Here, the ALJ found that Plaintiff could perform medium work, which Plaintiff points out became outcome determinative because, as an individual of advanced age, if he had been found to be capable of performing light work instead, the Medical Vocational Grids would have directed a finding of disability. . . . Moreover, the RFC in this case contained additional limitations, and while the ALJ discussed the evidence of record generally in his explanation of the RFC, he did not specifically indicate how he reached the finding that Plaintiff could perform medium work or the findings of Plaintiff's additional limitations.") (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06).

This Court therefore concludes that remand of the matter for further consideration is appropriate.[4] Moreover, remand is appropriate even if, upon further examination of the evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr.

---

[4] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the evidence and of the RFC determination, the Court does not consider those claims.

Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 6, 2024              *s/Norah McCann King*
                                  NORAH McCANN KING
                                  UNITED STATES MAGISTRATE JUDGE